*STATE OF OHIO EX REL. McGOWAN CO. v. ST. BERNARD (VILLAGE) ET AL.

MANDAMUS, APPEAL.

THEODORE NEIMAN v. ST. BERNARD (VILLAGE).

INJUNCTION, APPEAL.

1. AWARDING CONTRACT TO OTHERS THAN LOWEST BIDDER.

A court will not interfere with the exercise of discretion by trustees, who, in good faith and upon proper inquiry, have awarded a contract to another than the lowest bidder.

2. REFUSAL TO AWARD ON ACCOUNT OF SPECIFICATIONS.

Nor will a court interfere where there has been a refusal to award the contract to the lowest bidder, if his specifications fail to conform with those in the advertisement.

SMITH, J.

At the hearing of these cases, for the information and guidance of counsel as to the points as to which evidence should be introduced and the argument made, we announced that our examination of the statutes bearing on the points at issue, secs. 2415 and 2419, Rev. Stat., had led us to the conclusion.

"First, that if the evidence shows that if the trustees of the St. Bernard waterworks took proper and reasonable care to advise themselves whether one of the bidders for the pumping engines for the village could be depended on to do the work bid for, with ability, promptitude and fidelity, and on the knowledge thus obtained, in good faith, came to the conclusion that he was not, then, in our judgment, the court ought not, even if satisfied that such opinion was incorrect, interfere with their subsequent action awarding the contract to the next lowest bidder, if his bid was in proper form and complied with the advertisement. This is a discretion which the law has conferred upon the board of trustees and not upon the courts; and second, that under the advertisement made for bids in this case, where no definite description is made as to the character of the pumping engines required, or that they should be of any designated pattern, or be of a certain system of operation other than that mentioned in very general terms, then, if there be bids therefor by two or more persons,

* This decision, as to authority to award to other than lowest bidder, is followed in McClain v. McKisson, 8 Circ. Dec., 357.

Nieman v. St. Bernard Village.

offering engines of a substantially different character in one or more respects, and the trustees, acting with due care and on proper inquiry and consideration, in good faith are of the opinion that one of them is not in accordance with the terms of the advertisement for bids, in any substantial respect, and that one is much preferable to the other, and that the interests of the village would be better subserved by choosing the one rather than the other, that they might legally do so, though the bid for this was higher than for the other. In such case the one selected might well be the lowest bid for that particular kind of engine, and in such case a court ought not to interfere with the discretion conferred upon them."

We understand that counsel on both sides accepted and consented to these statements as being correct, and the law applicable to the cases on trial, and thereupon the evidence and arguments were heard by the court, and the principal question presented for our determination is, whether, in the award by the trustees of the water works of the village of St. Bernard to the Laidlaw-Dunn-Gordon Co. of the contract for furnishing and erecting of pumping engines for said village at a bid largely in excess of that of the John H. McGowan Co. for pumping engines (which we think the evidence fairly shows were substantially of the same character and of equal power and quality), there was any such want of good faith by them in the investigation of the merits of the different engines, or in the investigation and decision of the question whether the McGowan Co. could be depended upon to do the work bid for with the ability, promptitude and fidelity, or in awarding the contract to the Laidlaw company, which was not the lowest bidder. If there was any such want of good faith on their part as to either of those matters, we would deem it to be our duty to grant the relief prayed for.

With some hesitation and doubt we have reached the conclusion that the evidence does not show this satisfactorily. It is entirely clear that long before this controversy arose that the trustees had selected an engineer to have the charge of the erection of this plant who was certainly skilled and had considerable experience in matters of this kind, and was in good repute as a skilled engineer. And it is apparent, too, that they depended to a very great extent, and properly so, on his advice and judgment as to the comparative merit of the engines proposed to be furnished to the village under the several bids, and as to the best manner in which they should be placed and operated. It is shown by the evidence, however, that the board was not content to rely wholly upon the advice of their engineer, but were diligent in their examination of engines then in actual operation in other places, and that what they saw naturally and properly led them to the conclusion that the engines they saw in these other water works plants in the villages in the neighborhood did their work well and were admirably suited for use in the plant which they were about to establish at St. Bernard. It is true that those they saw were most, if not all, from the Laidlaw company, but it was, perhaps, the misfortune of the McGowan company, that though it owned one of the largest and most successful pump-making plants in the country, with an experience of about fifty years, it had not hitherto gone extensively into the business of supplying pumping engines for water works in villages, and the result was that the trustees became convinced that the engines of the Laidlaw company were admirably fitted to perform the work desired. But the trustees did visit the McGowan works and examined other engines in the shop, made by the company, of a different character, perhaps, and took other steps to satisfy themselves in regard to the ability of the company—among other things having held conferences with the different bidders after their bids were received.

Having used these means to inform themselves, it is shown that after the bids were received, the trustees then formally submitted them to their engineer for his advice as to what should be done in the matter. This, too, would seem to have been the proper thing to do. It was on a subject as to which the opinion of an expert would be almost a necessity. It is not to be expected that men unfamiliar with such things could know which one of several engines bid for was best suited for their purpose.

The report of the engineer made to the board shows that the bid of the Laidlaw company for the engine proposed to be furnished was $5,007, which was $1,467 more than the bid of the McGowan company for what we esteem substantially the same engine; but the engineer states that in the bid made by the Laidlaw company, it was proposed to make a finish of black walnut around some of the machinery and do other work upon the same, not called for in the specifications, the cost of which they say will be about $1,200, and which the engineer says will reduce the difference between the two bids about $267. He further says in his report that while

"The John H. McGowan Co. are known for many years as successful builders of small steam pumps of various patterns; they have, within the past few months, concluded to also become contractors for the construction of machinery adapted to waterworks purposes, and in this case it is to be regretted that they are as yet unable to refer to a waterworks plant, having pumping engines, such as are desired here, which are of their design and construction. I will further remark, but do it reluctantly, that in the absence of examples of actually built machines, the drawings submitted with their proposal are very incomplete and unsatisfactory for either illustrating what the company really proposes to furnish, or in the manner of the general arrangement of the plant. There does not appear a single figured dimension on the drawings, neither is the scale given, to which the drawings are made. The Laidlaw-Dunn-Gordon Co., upon the other hand, are experienced builders of waterworks machinery, and they refer you to a number of places where they have machinery, such as you ask for, and of which they are the builders. In addition to this they submitted carefully executed working drawings for this particular work, on which are given figured dimensions of all the essential facts and a quite satisfactory arrangement of all the water and steam pipe work. * * * It is quite evident from the character of the drawings submitted by the bidders for this work, that the Laidlaw-Dunn-Gordon Co. bestowed more thought and care in the preparation of their proposal to successfully install the machinery for your works than the McGowan Co. did on theirs. For that reason, and from the fact that the latter company has not heretofore built pumping engines as contemplated in the specifications, I fear that their first attempt would be to a great degree experimental and uncertain, and under these circumstances I cannot recommend the awarding of the contract to that firm as the lowest and best bidder."

Thereupon the trustees, having read the report, and on due consideration, as it appears from their minutes, adopted a resolution to the effect that, in their opinion, the John H. McGowan Co. could not be depended upon to do the work and furnish the pumps called for in the specifications and advertisement with ability, fidelity and promptness, and that, in the opinion of the board, after careful investigation and thorough inquiry, the plan, kind and design of the pumps submitted by the Laidlaw-Dunn-Gordon Co. is the most desirable, and, all things considered, the cheapest; therefore they awarded the contract to that company.

In view of all these facts and of the explicit evidence given by the trustees in explanation of their action, and of their good faith in the matter and their reliance upon the opinion of their engineer, we must hold that good faith on their part is shown. And yet we can not refrain from the expression of our opinion that the board was badly advised, and, in the resolution adopted, went much farther than they should have gone, and, so far as their resolution could do so, has placed an unjust stigma upon the character and business reputation of a corporation which, the evidence abundantly shows, could be depended upon to do the work and furnish the pumps called for in the specifications with ability, fidelity and promptness, and that, in our judgment, there was not, in fact, sufficient evidence before the board to warrant the contrary opinion.

We incline to the view that the drawings or blue-prints which the specifications required should accompany each proposal or bid, and which were furnished by the McGowan company did not strictly conform to the terms prescribed by giving dimensions and sectional views of pumps and cylinders of the horizontal compound engines proposed to be furnished. There is some question as to this, but we think they did not, and the rejection of the bid might, perhaps, have been more properly placed on this ground. This was one of the objections urged by the engineer in charge, and had more substance than others which are now urged against it.

We are impressed by the evidence that the engineer had a strong partiality for the engines of the Laidlaw company, and desired that this company should receive the contract. Doubtless he had good grounds for his good opinion of their engines and of the reliability of the company. But while, under the law of the state, advertisements for such work are required, and the purpose of the statute is that the contract therefore should be let to the lowest and best bidder, who can perform the work with fidelity and promptness, there is reason to fear that the action of the trustees in this case, though made in good faith, has not resulted in fair treatment to the lowest bidder here, who, as we have found, was entirely able to perform his contract in the manner prescribed for by the statute; or, in effect, awarding the contract to the lowest and best bidder.

In view of the foregoing, we are of the opinion that the plaintiffs were justified in bringing these actions, and though the petition will be dismissed, it will be at the cost of the village.

*Theodore Horstman, Johnson & Levy* and *W. H. Jones*, for the plaintiffs.

*Frank M. Gorman, John Boutet* and *Willis M. Kemper, contra.*